**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLY DEJESUS ROSA-ROQUE, | Civil Action No. 16-4395 (CCC) |
| Petitioner, | |
| v. | **OPINION** |
| CHARLES GREEN, | |
| Respondent. | |

**CECCHI, District Judge**:

Presently before the Court is Petitioner Willy Dejesus Rosa-Roque's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), challenging his detention by immigration officials pursuant to the mandatory detention statute under 8 U.S.C. § 1226(c). For the reasons stated below, the Court grants the Petition.

## I. FACTUAL BACKGROUND

Petitioner, a native of the Dominican Republic, was admitted into the United States as a lawful permanent resident on November 13, 1992. (ECF No. 5 at 6-7.) On February 20, 2004, Petitioner was convicted of possession of a controlled substance with intent to distribute within 1,000 feet of school property under New Jersey state law. (*Id.* at 7.) On January 14, 2016, Immigration and Customs Enforcement ("ICE") placed him into removal proceedings for his prior criminal conviction, and detained him under the mandatory detention statute, 8 U.S.C. § 1226(c). (*Id.*)

Thereafter, Respondent alleges that Petitioner filed numerous continuances, which lengthened his removal proceeding and, of course, his detention. (*See id.* at 7-9.) However,

Respondent does not demonstrate that any of the continuances were requested in bad faith, or that the issues raised by Petitioner during the removal proceeding were frivolous—indeed, filings by the parties show that the immigration court granted Petitioner's application for cancellation of removal. (ECF No. 12 at 2.) Respondent has appealed that decision to the Board of Immigration Appeals. (ECF No. 13 at 1.)

## II. DISCUSSION

Federal law sets forth the authority of the Attorney General to detain aliens in removal proceedings, both before and after the issuance of a final order of removal. Title 8 U.S.C. § 1226 governs pre-removal-order detention of an alien. Section 1226(a) authorizes the Attorney General to arrest, and to detain or release, an alien, pending a decision on whether the alien is to be removed from the United States, except as provided in subsection (c). Section 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General-
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on-
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole; . . .

8 U.S.C. § 1226(a). Certain criminal aliens, however, are subject to mandatory detention pending the outcome of removal proceedings, pursuant to 8 U.S.C. § 1226(c)(1), which provides in relevant part:

> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in Section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

2

- (C) is deportable under section 1227(a)(2)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
- (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

Although § 1226(c) does not specify a time period during which the Attorney General may detain an individual while a removal proceeding is ongoing, the Supreme Court has held that "[t]he INS detention of . . . a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings," is consistent with the Constitution. *Demore v. Kim*, 538 U.S. 510, 531 (2003). Specifically, *Demore* held that a detention of six months under § 1226(c) is not in violation of the Constitution. *Id.* at 531. However, *Demore* did not define what constitutes a "limited period" for a constitutional detention. In that regard, the Third Circuit subsequently held that prolonged detention, without an individualized bond hearing, violates the Due Process Clause of the Fifth Amendment. *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011). "[W]hen detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.*

The Third Circuit expanded upon its *Diop* ruling in *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d. Cir. 2015). "[B]eginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time [petitioner] had been detained for one year, the burdens to [petitioner]'s liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Id.* at 478. The court went on to conclude

3

that "the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [petitioner]'s continued detention was or is necessary." *Id.* The court explained that "a court must use its independent judgment to decide whether a detention is 'reasonably necessary to secure removal.'" *Id.* at 473 (quoting *Diop*, 656 F.3d at 234).

> Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Id.* at 474 (quoting *Demore*, 538 U.S. at 532-33 (Kennedy J., concurring)). The court noted that the Supreme Court in *Demore* expected detentions under section 1226(c) to be limited, and this expectation was paramount in finding that the law complied with due process. *Id.* (citing *Diop*, 656 F.3d at 233-34). "[T]he constitutionality of this practice is a function of the length of the detention. . . . [T]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Id.* (quoting *Diop*, 656 F.3d at 232, 234).

> [D]ue process requires us to recognize that, at a certain point—which may differ case by case—the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous. At this tipping point, the Government can no longer defend the detention against claims that it is arbitrary or capricious by presuming flight and dangerousness; more is needed to justify the detention as necessary to achieve the goals of the statute. . . . [S]ection 1226(c) implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.

*Id.* at 474-75 (citation and quotation omitted). In other words, courts should employ a balancing framework, which is highly fact-specific, in deciding whether a continued § 1226(c) detention is reasonable. *Id.* at 474.

4

In that regard, "the primary point of reference for justifying the alien's confinement" cannot be a petitioner's actions during the removal process, and "must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses." *Id.* at 475. Therefore, it is possible that a detention may be unreasonable even if the Government was not at fault for causing delays in the removal proceedings. *Id.* This is consistent with the statutory purposes because mandatory detentions under § 1226(c) are not punitive in nature. *See id.* at 478; *Carlson v. Landon*, 342 U.S. 524, 533 (1952) ("Deportation . . . has never been held to be punishment."). As the *Chavez-Alvarez* court pointed out, the analysis regarding the constitutionality of a § 1226(c) detention involves *competing* interests between a petitioner's liberties and the Government's desire to effectuate removal; it follows that, once a court finds that a petitioner's liberty interests outweigh the Government's interests, the Government may be forced to provide additional procedural safeguards even if it has done nothing wrong.

However, "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." *Id.* at 476. Courts must consider a petitioner's individual circumstances to determine whether the petitioner has pursued his challenges to removal in good faith. *Id.* "The most important consideration . . . is whether an alien challenges aspects of the Government's case that present real issues, for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue." *Id.* A court cannot "effectively punish" aliens "for choosing to exercise their legal right to challenge the Government's case against them by rendering 'the corresponding increase in time of detention [as] reasonable.'" *Id.* (quoting *Leslie v. Att'y Gen. of U.S.*, 678 F.3d 265, 271 (3d Cir. 2012)). As such, if a court finds that a petitioner has intentionally and

deliberately delayed removal proceedings in order to "stall" the process, only then can the court weigh the delay against the petitioner.

Here, Respondent bases its arguments against habeas relief by focusing solely on Petitioner's actions during the removal proceedings; that is, Respondent argues in a conclusory fashion that Petitioner is primarily responsible for the delays in the removal proceedings in bad faith. However, the only facts presented by Respondent are that Petitioner has requested, and was granted, numerous continuances, without explaining why any of those continuances were requested in bad faith, or whether the issues raised by Petitioner were meritless. Therefore, Respondent has only established that Petitioner took some time to litigate what may very well have been—and in fact, as it turns out, was found to be—a meritorious claim. As explained above, under established precedent, this Court cannot find that habeas relief is unwarranted based on Respondent's inadequate showing.

If Respondent takes issue with the continuances, it is a docket management issue that can be more properly addressed by the immigration court. This Court will not question the immigration court's discretion on how to manage its cases, and this Court certainly will not punish Petitioner after the immigration judge determined that continuances were proper. Absent a showing of bad faith, dilatory tactics, or that continued detention is *necessary*, the Court cannot allow Respondent to continue its detention of Petitioner for, as stated above, what is supposed to be a non-punitive purpose.[1] Indeed, it is difficult to imagine what Respondent's motivation could

---

[1] The Court also rejects Respondent's argument that, had Petitioner been granted a withholding of removal, it is Petitioner's burden to prove that removal to anywhere else in the world is impossible under 8 C.F.R. § 208.16(f). (*See* ECF No. 5 at 23.) There are 193 member nations within the United Nations. Overview, United Nations, http://www.un.org/en/sections/about-un/overview/index.html (last visited Apr. 25, 2017). If the Court adopts Respondent's reasoning, it would necessarily require Petitioner, at this point in the proceedings, to establish not only that removal to his home country is improper, but also that Petitioner cannot be removed to any of the other 191

6

be for advocating the continued detention of Petitioner *without affording him a bond hearing*, even after a cancellation of removal has been *granted*, other than prejudice against him for a prior crime, a crime for which he has already been duly punished. The law does not require Respondent to release Petitioner outright. It simply requires Respondent to provide Petitioner with minimal due process protection under the Constitution—implicit in *Demore*'s ruling is that while the government may have a legitimate interest in detaining potentially removable aliens, such interest is not unfettered, and must be justified. *See Chavez-Alvarez*, 783 F.3d at 478 ("[T]he underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [petitioner]'s continued detention was or is necessary.").

For the foregoing reasons, the Court holds that Petitioner's continued mandatory detention, pursuant to § 1226(c), is no longer reasonable under the circumstances of this case. Accordingly, the Court grants the Writ of Habeas Corpus, and directs that an immigration judge provide Petitioner with an individualized bond hearing to determine "whether detention is still necessary to fulfill the statute's purposes of ensuring that [Petitioner] attends removal proceedings and that [Petitioner's] release will not pose a danger to the community." *Leslie*, 678 F.3d at 271. The Court further directs that an immigration judge provide such bond hearing within 10 days of the date of entry of the accompanying Order.

---

potential destinations in the world. Respondent makes this argument without providing any evidence that removal to a third country is possible. Respondent's argument, without *affirmative* evidence that removal to some other third country is a distinct possibility, defies any reasonable interpretation of § 208.16(f).

## III. CONCLUSION

For the reasons set forth above, the Petition is GRANTED. The Court directs that an immigration judge, within 10 days of the date of entry of the accompanying Order, provide Petitioner with an individualized bond hearing consistent with the holdings herein.

Date: April 25, 2017

**Claire C. Cecchi, U.S.D.J.**